IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-00015-PAB-BNB

KENNITH MEADOWS,

Plaintiff,

v.

LIEUTENANT JUDY KNIGHT,

Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the defendant's **Motion for Summary Judgment** [Doc. #25, filed 11/23/2011] (the "Motion"). I respectfully recommend that the Motion be GRANTED.

### I. STANDARD OF REVIEW[1]

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[1] The plaintiff is represented by counsel. Therefore, I do not liberally construe his pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II. UNDISPUTED MATERIAL FACTS

1. The plaintiff filed his Complaint and Jury Demand on January 4, 2011 [Doc. #1] (the "Complaint"). At all times relevant to the allegations of the Complaint, the plaintiff was incarcerated by the Colorado Department of Corrections at the Arkansas Valley Correctional Facility ("AVCF"). *Complaint*, p. 2; *Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment* [Doc. #35] (the "Response"), First Exhibit, ¶ 2.

2. The plaintiff worked in the kitchen at AVCF. There are at least four inmates per shift who work as cooks, and there are two shifts. *Response*, First Exhibit, ¶ 2.

3. The defendant, Judy Knight, is a Lieutenant in the Food Service Department of AVCF. *Motion*, Ex. A-2, ¶¶ 2-3. The plaintiff states that Lt. Knight was his supervisor. *Response*, First Exhibit, ¶ 1. Lt. Knight states that as a Lieutenant, she is responsible for

supervising the sergeants on duty in the Food Service Department, and the sergeants are responsible for supervising the inmates during cooking and cleaning operations. *Motion*, Ex. A-2, ¶ 2-3.

    4. In April 2010, the DOC installed new 75 gallon cooking kettles in the AVCF kitchen. *Motion*, Ex. A-2, ¶¶ 5-6; *Response*, First Exhibit, ¶ 4. The kettles have lids that weigh approximately 30 pounds. *Response*, First Exhibit, ¶ 4.

    5. The plaintiff was injured on April 20, 2010, when the lid of a kettle he was cleaning fell on his head. *Motion*, Ex. A-1; *Response*, First Exhibit, ¶ 5. At the time of the accident, none of the kettles had a mechanism to hold their lids open during cooking and cleaning operations. *Motion*, Exs. A-2, ¶ 7 and A-3, ¶ 7; *Response*, First Exhibit, ¶ 4.

    The Complaint asserts one claim for violation of the plaintiff's Eighth Amendment rights. *Complaint*, pp. 4-5. The defendant is sued solely in her individual capacity for money damages. Id. at p. 2.

### III.  ANALYSIS

    The defendant asserts that she is entitled to qualified immunity. *Motion*, pp. 10-12. Qualified immunity shields government officials from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity not only shields a defendant from unwarranted liability, but also protects the defendant from the burdens of defending a suit. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). The qualified immunity defense is available only to government

officials sued in their individual capacities. Buchwald v. University of New Mexico School of Medicine, 159 F.3d 487, 492 (10th Cir. 1998).

When a defendant asserts a qualified immunity defense on summary judgment, a heavy two-part burden shifts to the plaintiff. Medina, 252 F.3d at 1128. The plaintiff must establish that "the defendant's actions violated a constitutional or statutory right." Scull v. New Mexico, 236 F.3d 588, 595 (10th Cir. 2000) (internal quotations and citations omitted). The plaintiff must also show "that the constitutional or statutory right the defendant allegedly violated was clearly established at the time of the conduct at issue." Id. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotations and citations omitted). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." Medina, 252 F.3d at 1128.

### A. Violation of a Constitutional Right

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care and take "reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations and citations omitted).

A prisoner claiming an Eighth Amendment violation must establish both objectively and subjectively that particular conditions of confinement constitute cruel and unusual punishment. Wilson v. Seiter, 501 U.S. 294, 297-298 (1991). To satisfy the objective component, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834.

To satisfy the subjective component, a plaintiff must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm. Farmer, 511 U.S. at 834. The subjective component to a deliberate indifference claim is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

The plaintiff claims that Lt. Knight was deliberately indifferent to his safety because she ordered the inmates to keep the kettles clean but did not provide a safe way to accomplish this. *Response*, First Exhibit, ¶ 5. He attests that the kettles used a shock absorber system to keep the lids open, but the system did not work and Lt. Knight knew it did not work. *Response*, First

5

Exhibit, ¶ 4.  He further attests that Lt. Knight was aware that the kettle lids could slam shut and cause serious injury; she and other staff stood by and watched without comment as the plaintiff and other inmates constructed make-shift "ropes" out of plastic trash bags and cellophane wrap to hold the lids open while they were cleaned; the inmates used this method to secure the lids from the day the kettles were installed; no staff, including Lt. Knight, ever told the inmates not to use plastic to secure the lids; no staff, including Lt. Knight, ever instructed the inmates to have another inmate hold the lid open; if the inmates had been instructed not to secure the lids with plastic, they would have been written up if they disobeyed the order; no inmate was written up for using plastic to secure the kettle lids; and Lt. Knight did not authorize the expenditure of money and effort to construct a safe way to keep the lids open until after the plaintiff was injured.  Id. at ¶¶ 4, 7, 8, 9.  On the day of the accident, Lt. Knight watched the inmates tie up the lids with plastic wrap; she told the inmates earlier that they could secure the lids with plastic; she did not tell the inmates not to tie up the lids with plastic; and she did not instruct the plaintiff to have another inmate hold the lid open.  Id. at ¶ 9.

Lt. Knight attests that during April 2010, the Food Service Department was in the process of installing a mechanism that would allow the lids to be fastened during cooking and cleaning.  *Motion*, Ex. A-2, ¶¶ 5-7.  In the interim, the inmates were instructed to seek the assistance of another inmate to hold the kettle lid open during cooking and cleaning operations.  Id. at ¶ 8.  The defendant states that she never instructed the plaintiff or any other inmate to make ropes out of trash bags or cellophane in order to keep the kettle lids open while they were being cleaned.  Id. at ¶¶ 11-12.  She further states that according to the accident investigation report, video

6

surveillance footage showed an inmate tying the plaintiff's kettle lid to a fire suppression nozzle with cellophane moments before the accident. Id. at ¶ 10.

### 1. Personal Participation

Lt. Knight argues that she cannot be held liable because she did not personally participate in the alleged constitutional violation. Specifically, she argues that she did not instruct the plaintiff or any other inmate to make ropes out of trash bags or cellophane to keep the kettle lid open, and she was not present during the plaintiff's accident because she was on a short break. *Motion*, pp. 5-7.

An individual cannot be held liable in a section 1983 action unless she caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983). Respondeat superior is not within the purview of section 1983 liability. Id. In order for a supervisor to be liable under section 1983, there must exist a causal connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Butler v. City of Norman, 992 F.2d 1053, 1055 (10thCir. 1993); see also Rizzo v. Goode, 423 U.S. 362, 371 (1976). Without a showing of direct responsibility for the alleged violations, liability will not be imposed on a supervisory official. Id.

The plaintiff has submitted evidence that Lt. Knight was his supervisor; she was aware of the danger that the lids could slam shut and cause serious injury; and she stood by and watched the inmates tie up the lids without telling them to do anything differently. The plaintiff has created a material fact dispute regarding whether Lt. Knight personally participated in creating the unsafe condition.

## 2. Failure to Meet the Subjective Component

Lt. Knight also argues that the plaintiff cannot meet the subjective component of his Eighth Amendment claim. *Motion*, pp. 7-10. Again, Lt. Knight relies on her statement that she did not instruct the plaintiff or any other inmate to make ropes out of trash bags or cellophane. The plaintiff has submitted evidence that Lt. Knight observed and condoned the practice, however.

Lt. Knight argues that even if she did condone the use of plastic to hold the lids open, it does not show deliberate indifference, but instead shows that she "acknowledged the purported risk presented by the kettle lid and took measures to prevent injury to the plaintiff and other offenders." Id. at p. 9. She further argues that, at most, the alleged conduct was negligent, and negligence is not cognizable in a claim pursuant to section 1983. Id. at pp. 9-10.

Deliberate indifference lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." Farmer, 511 U.S. at 836. "While Estelle[2] establishes that deliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. at 835. An inmate "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer 842. In addition, although deliberate indifference is a subjective inquiry, a jury is permitted to infer that a prison official had actual knowledge of the constitutionally infirm condition based solely on circumstantial evidence, such as the obviousness of the condition. Id.

---

[2]Estelle v. Gamble, 429 U.S. 97, 104 (1976).

at 842. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id.

The plaintiff has presented facts which demonstrate that Lt. Knight knew that the inmates, including the plaintiff, were attempting to secure 30 pound lids by constructing make-shift ropes out of trash bags and cellophane wrap and that she condoned the practice because she observed it and did not stop the inmates from doing it. A factfinder could conclude that the risk involved in this practice was so obvious that Lt. Knight knew of the risk to the inmates and disregarded that risk.

### 3. Failure to Establish the Objective Component

Lt. Knight asserts--for the first time in her reply brief--that the plaintiff has failed to meet the objective component of his Eighth Amendment claim. *Reply in Support of Defendant's Motion for Summary Judgment* [Doc. #36], pp. 4-6. The defendant may not assert an argument for the first time in a reply brief. Green v. New Mexico, 420 F.3d 1189, 1196-97 (10th Cir. 2005) ("the nonmoving party should be given an opportunity to respond to the new material raised for the first time in the movant's reply"); Minshall v. McGraw Hill Broadcasting Co., Inc., 323 F.3d 1273, 1288 (10th Cir. 2003) (an argument raised for the first time in reply brief is waived).

Moreover, the argument is without merit. The plaintiff has presented evidence showing that he was required to clean the kettles and that the condoned method to hold the lids open was to tie them up with plastic, creating a substantial risk that the make-shift ropes would fail and the 30 pound lids would slam down causing injury. This evidence is sufficient to create a material fact dispute that a substantial risk of serious harm existed.

## B.  Clearly Established Constitutional Right

The plaintiff has created a material fact dispute regarding whether Lt. Knight violated his Eighth Amendment right to be free from cruel and unusual punishment.  The remaining issue is whether the right was clearly established at the time of the alleged violation.

The plaintiff cites two cases-- <u>Fruit v. Norris</u>, 905 F.2d 1147 (8th Cir. 1990), and <u>McClelland v. Facteau</u>, 610 F.2d 693, 697 (10th Cir. 1979)--in an attempt to establish that "[t]here is no qualified immunity for ordering prisoners to work in unsafe and unsanitary conditions." *Response*, pp. 16-17.  In <u>Fruit</u>, several inmates sued prison officials for Eighth Amendment violations based on disciplinary action taken against them for refusing to assist a prison maintenance supervisor with cleaning out a wet-well portion of the prison's raw sewage lift-pump station. 905 F.2d at 1148. The inmates refused to assist because their request for protective clothing and equipment was denied. <u>Id.</u>  The wet-well was described as follows:

> At trial, the evidence established that the wet-well portion of the system is an underground concrete cylinder six feet in diameter and twenty-two feet deep that stands upright, with one end of the cylinder at ground level. Waste from the prison, including sewage from over 490 toilets, flows continuously into the wet-well from an underground sewage pipe located on the north side about eight feet from the bottom of the well. A small opening at the top allows entry by ladder down into the well for cleaning and maintenance.

<u>Id.</u> at 1148.

The appellate court reversed the trial court's dismissal, finding that "common sense suggested that the officials should have been aware of the danger given the risk of heat stroke, the risk of disease, and the fact that the condition included close proximity to human waste." <u>Id.</u> at 1150.

In McClelland, an action was brought against police chiefs and officers for alleged deprivation of Mr. McClelland's Fourth, Fifth, Sixth, and Fourteenth Amendment rights during arrest and custody. 610 F.2d at 695. Specifically, Mr. McClelland was denied use of a telephone, not informed of his rights, not brought before a magistrate, and beaten by an officer. The police officers settled with Mr. McClelland. Id. The appellate court reversed the trial court's grant of summary judgment in favor of the police chiefs finding that there was a genuine issue of fact regarding whether the police chiefs breached their duty of supervision. Id. at 698.

The plaintiff does not explain why either of these cases shows that the state of the law in April 2010 gave Lt. Knight fair warning that her actions were unconstitutional. Hope, 536 U.S. at 741. McClelland does not address safe working conditions in a prison setting. Although Fruit addresses working conditions, the risk of harm there was far more obvious and egregious than the risk alleged here. Moreover, the Tenth Circuit has stated :

> [F]or a right to be clearly established we look for Supreme Court
> or Tenth Circuit precedent on point, or clearly established weight
> of authority from other courts that found the law to be as the
> plaintiff maintains.

Swanson v. Town of Mountain View, Co., 577 F.3d 1196, 1200 (10th Cir. 2009). Fruit is not a Supreme Court or Tenth Circuit case, and a single case with distinguishable facts does not constitute the "clearly established weight of authority" contemplated in Swanson.

The plaintiff has the burden of demonstrating that the Eighth Amendment right allegedly violated by Lt. Knight was clearly established in April 2010. Walker v. City of Orem, 451 F.3d 1139, 1151 (10th Cir.2006). He has failed to cite any Supreme Court or Tenth Circuit case law clearly establishing the right under similar facts, and I have found none.

Nor have I found support for the plaintiff in the clearly established authority of other courts. Bagola v. Kindt, 131 F.3d 632 (7th Cir. 1997) (no Eighth Amendment violation where inmate slipped on patch of oil on floor, lost balance, and caught hand in textile machine while performing inspection on machine); Osolinski v. Kane, 92 F.3d 934 (9th Cir. 1996) (finding that prison officials were entitled to qualified immunity on claim that their failure to repair oven door caused door to fall off and burn inmate's arm, stating that "[n]o cases in this circuit clearly established that a single defective device, without any other conditions contributing to the threat to the inmates' safety, created an objectively insufficiently humane condition violative of the Eighth Amendment:); Stephens v. Johnson, 83 F.3d 198 (8th Cir. 1996) (no Eighth Amendment claim where prisoners complained of unsafe working conditions at a warehouse, including no protective equipment; no backup warning beeper on the forklift; inmates were required to climb onto high shelves to retrieve objects; dollies did not have safety straps; inmates were lifted up on bare forks of forklift to retrieve materials from high shelves; and inmates did not receive any safety training).

Two circuit courts have found that unsafe working conditions can rise to the level of an Eighth Amendment violation where the inmate alerted prison officials of unsafe equipment, but the official ordered the inmate to keep working on the equipment. Morgan v. Morgensen, 465 F.3d 1041 (9th Cir. 2006) (finding that prison official was not entitled to qualified immunity where inmate had alerted official that printing press was malfunctioning, official required inmate to continue working on the press, and the inmate was injured by the press); Gill v. Mooney, 824 F.2d 192 (2nd Cir. 1987) (finding that inmate survived motion to dismiss on claim for Eighth Amendment violation where inmate informed prison official that ladder was defective, but

official required inmate to continue working on the ladder). Here, the record contains no evidence that any of the inmates informed prison officials that they believed securing the lids with plastic ropes was unsafe, however.

Because the plaintiff has failed to establish that the Eighth Amendment right allegedly violated by Lt. Knight was clearly established in April 2010 , Lt. Knight is entitled to qualified immunity.[3]

### IV.  CONCLUSION

I respectfully RECOMMEND[4] that the Motion [Doc. # 25] be GRANTED and that judgment be entered in favor of Lt. Knight.

Dated June 18, 2012.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge

---

[3] I note that although qualified immunity prevents recovery in this case, it does not completely foreclose any remedy. The Colorado Governmental Immunity Act, which recognizes a cause of action for negligence, may provide a remedy if timely pursued.

[4] Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).